UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BRENDA K. JURGENS**,

Debtor.

Case No. **15-60592-13**

# MEMORANDUM OF DECISION

At Butte in said District this 20th day of October, 2015.

In this Chapter 13 case, the Court held a hearing after notice at Missoula on October 8, 2015, on the motion for conversion to Chapter 7 (Document No. 13) filed by the Debtor's brother Gary Martin ("Martin") and Victor Properties, LLC ("Victor Properties"). Debtor Brenda K. Jurgens ("Brenda" or "Debtor") filed an objection, and appeared and testified at the hearing represented by attorney Edward A. Murphy ("Murphy") of Missoula. Gary Martin appeared and testified, and he and Victor Properties were represented by attorneys Jenny Jourdannais of Missoula, Montana, Bernard R. Given II of Los Angeles, California, and Robyn Frohlin of Austin, Texas. The Chapter 13 Standing Trustee Robert G. Drummond appeared at the hearing and stated that he does not join the motion for conversion. Exhibits ("Ex.") 1, 2, 7, and 69-8 were admitted. At the conclusion of the parties' cases-in-chief the Court took the motion for conversion under advisement. After review of the motion and objection, the record, and applicable law the Court will delay the entry of its conversion order until after November 5,

2015, when the Court will conduct an additional evidentiary hearing to allow the Debtor to prove that she is an individual with regular income eligible for relief under 11 U.S.C. § 109(e).

This Court has jurisdiction of this chapter 13 bankruptcy case under 28 U.S.C. § 1334(a). The motion for conversion and Debtor's eligibility for chapter 13 relief under § 109(e) are core proceedings under 28 U.S.C. § 157(b)(2).

## FACTS

The Debtor filed her voluntary Chapter 13 petition on June 30, 2015. After an extension, she filed her Schedules and Statement of Financial Affairs ("SOFA"), Ex. 2, on July 28, 2015, with declarations which she signed under penalty of perjury that the read the schedules and SOFA and they are true and correct. Also on July 28, 2015, Debtor filed her Chapter 13 Plan, Ex. 1.

Debtor's Plan proposed monthly payments in the amount of $500 for 60 months, or when the terms of the Plan are completed. The Plan is a "cure by sale" Plan in which the Debtor would be given 12 months to sell her residence, from the proceeds of which Debtor proposed to pay all claims in full with interest. The Chapter 13 Trustee filed objections to confirmation, and at the hearing the Court sustained the objection and denied confirmation based on the inconsistent treatment of Victor Properties' claim in the Plan as both impaired and unimpaired. Brenda testified that she has made two plan payments of $500 in August and September of 2015 for a total of $1,000, which the Trustee confirmed at the hearing he received.

Debtor's Schedule A lists two contingent parcels of real property at 948 Bumpy Lane, Victor, MT 59875, at a current value of $1,975,000.00 encumbered by secured claims stated in the amount of $762,966.18, which Schedule D states are held by Victor Properties and a second

2

mortgage held by First Interstate Bank. Brenda testified that she is not current on her mortgages.

Schedule B lists personal property, including cash in the sum of $650, four bank accounts with total deposits of approximately $6,500, and an account at Wells Fargo in Midland County, Texas, for which Debtor is the personal representative of the estate of her mother Billy Martin, with a current balance of about $400. At item 14 Schedule B lists a one-half interest in WestPac Development, LLC ("WestPac"), a Washington limited liability company with a stated value of $455,000. Brenda testified that her partner in WestPac is withholding WestPac funds to which she is entitled.

Schedule F lists unsecured nonpriority claims in the total amount of $118,366.66. Among the claims listed on Schedule F are Martin's claim arising from litigation over Brenda's handling of the estates of their deceased payments, which is listed as unliquidated and disputed in an "unknown" amount, and a claim of Terry Defoor in the amount of $80,967.00 described as unliquidated and disputed arising from the creditor's "claims of theft of property which is denied by debtor."

Schedule I lists the Debtor is employed as a member/self-employed by WestPac, in Kirkland, WA, for the past 5 years. Her monthly income from WestPac is listed at $0. Brenda testified that she is not receiving income from her partner in WestPac, although she asserts she is entitled to payment from WestPac, and she is not receiving income from any other source. Other income on Schedule I is $6,700.00 per month in support from Brenda's daughter and son-in-law. However, Brenda testified that currently she is not receiving that $6,700 from her daughter, and that they withdrew their offer of support since they didn't want Martin to sue them. Schedule I lists no other income, and Debtor marked "No" in response to question 13: "Do you expect an

increase or decrease within the year after you file this form?" Debtor added: "Debtor is looking for work and has contacted several friends for interviews. Also, Debtor may be entitled to money from WestPac, although that may require litigation."

Schedule J lists Debtor's monthly income in the total amount of $6,231, of which a total of $4,300 is for her mortgage or home ownership expenses. Utilities are stated as $400, but she testified that her propane tank is full and she does not use much gas because she also heats with firewood.

Debtor's SOFA lists her income from WestPac in the amounts of $228,719.00 in 2013, $150,000.00 in 2014, and $0.00 to date in 2015 at item 1, although Brenda testified that she believes she is entitled to funds from WestPac and there may be litigation. Ex. 2.

Item 2 lists "None" under income other than from employment or operation of business. Brenda testified that her residence is listed for rent on the website VRBO (Vacation Rental By Owner), but that it should not be listed on VRBO and that she has not rented it for several years. She testified that she needs to amend her SOFA with respect to the VRBO income.

Item 3 lists payments to three creditors within 90 days before the petition date, including payment to Brenda's attorneys in Texas; $3,400 tendered to Victor Properties which has not been cashed; and her car payment to Ally Financial of $720 per month. Brenda testified that she made these payments from proceeds of the sales of guns and farm equipment. Brenda testified that she made an additional payment to First Interstate Bank which is not listed and that she wrote a $6,000 check to herself which is not listed on the SOFA which she used to pay legal fees on

behalf of her mother's estate.[1]  Asked by her attorney to explain, she testified that a brokerage company which had possession of stock owned by her mother's estate refused to allow a check to be written to the estate's attorneys, so she wrote the $6,000 check to herself from which she paid the attorneys.

Item 4 of the SOFA lists several pending or dismissed lawsuits to which Debtor is or was a party within one year preceding the petition date, including litigation against Martin in Montana state district court; two cases against Defoor in Washington state court; a criminal proceeding in the State of Washington to which Brenda testified she pled guilty to a misdemeanor charge; her parents' probate cases and litigation against Martin pending in Texas.

Item 10 of the SOFA lists other transfers of property within 2 years immediately preceding the commencement of the case.  Debtor listed a sale of guns and farm equipment, a garage sale Debtor held where she received $3,500, the sale of 2 paintings at an art auction business in Wyoming, and Debtor's return of an engagement ring to Terry Defoor when she severed her relationship with him.  Brenda testified that she deposited the proceeds from sales of firearms and farm equipment into her bank accounts, and used that to complete her means test form.

Ex. 2 includes near the end a completed Official Form 22C-1 (Statement of Your Current Monthly Income and Calculation of Commitment Period).  Lines 10 and 11 state Debtor's total average monthly income as $6,500 from the sale of property.  Brenda testified that the $6,500 figure is just a projection of income she would earn from sales of property, including a sale of her

---

[1] During this testimony Debtor's attorney announced that she must file more amendments to her Schedules and SOFA.

residence which is under contract.[2]

Ex. 2 continues with Debtor's Official Form 22C-2 (Chapter 13 Calculation of Your Disposable Income). Item 9 of Official Form 22C-2 on Ex. 2 lists Debtor's First Interstate Bank mortgage payment as $2,716.00. Brenda testified that is an error, and that her monthly payment to First Interstate Bank is $1,300. Murphy stated he would have to amend that form to correct that amount.

Martin and Victor Properties filed their motion for conversion on July 14, 2015, on the grounds the Debtor is not an individual with regular income and because her liquidated, unsecured debts exceed the $383,175 limit of § 109(e). They seek conversion of the case to Chapter 7 because the Debtor is eligible for Chapter 7 under 11 U.S.C. § 1307(g), and because Debtor's disclosure of assets and liabilities are "wildly" inaccurate. Debtor filed an objection contending that she is within the debt limits of § 109(e) and she has income from the sale of assets and exempt property, as well as what she is owed by WestPac, support from her daughter and prospective employment.

Martin and Victor Properties filed Proofs of Claim Nos. 8, 9, and 12 on October 2, 2015. Martin's Proof of Claim No. 10, by itself, is for $400,000 which exceeds the $383,175 unsecured debt limit of § 109(e). Debtor filed objections and those claims are set for hearing on November 5, 2015.

---

[2] Debtor filed a motion to sell her residence on October 8, 2015, for $1,500,000. Document No. 79. The name of the buyer is blacked out on the buy/sell filed with the motion. Brenda testified that she is concerned that Martin/Victor Properties would try to contact the buyer and sabotage the sale. After the Trustee filed an objection, on October 13, 2015, the Debtor filed an amended motion to sell the residence, Doc. 90, the attachment to which identifies the prospective buyers as Martin Raymond Cook and Renee Pham Cook. Debtor's motion to sell is set for hearing on December 3, 2015.

Brenda testified that she is expecting a job offer any day now to make future plan payments, but she would not identify that prospective employer because of the nature of her work and because she expects the employment offer to include a non-disclosure agreement. She estimated her income from the first job offer at between $8,000 to $12,000 per month and she expects a job offer within the next two weeks.[3] In addition to that job offer, she testified that she has a back up job offer from an entity she identified as CPRE CURE if the first offer falls through.

Finally, Brenda testified that she sold hay on May 7, 2015, for $2,500, after she filed her Schedules and SOFA. She did not file a motion requesting authority from this Court to sell hay, but she testified that she told the Chapter 13 Trustee about the sale.

## DISCUSSION

Section 1307(c) of the Bankruptcy Code provides that a Chapter 13 case may be dismissed or converted to a chapter 7 proceeding "for cause," whichever is in the best interests of creditors and the estate and includes a non-exclusive list of 11 causes justifying that relief. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373-74 (2007). The United States Supreme Court noted in *Marrama* that cause under § 1307(c) may include bad faith conduct. *Id.* In this Court's view, the same reasoning applies to include lack of eligibility under § 109(e) as "cause" to dismiss or covert under § 1307(c).

Section 109(e) provides:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and

---

[3] Under questioning by the Court, Brenda testified that she had a background in technology and finding money lost through fraud.

> noncontingent, liquidated, secured debts of less than $1,149,525, or an individual and with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525, may be a debtor under chapter 13 of this title.

*In re Pillard*, 20 Mont. B.R. 458, 463 (Bankr. D. Mont. 2003).

"[A] debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition." *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*, 184 B.R. 82, 88 (9th Cir. BAP 1995); *In re Monroe*, 282 B.R. 219, 223 (Bankr. D. Ariz. 2002). Under this definition, the debts owed by Brenda to Martin and Victor Properties are noncontingent because all events giving rise to liability occurred prior to the filing of the bankruptcy petition. *Id.*

On the issue of whether a debt is unliquidated, a leading bankruptcy commentator writes:

> A debt is not liquidated if there is a substantial dispute regarding liability or amount. Although there may be issues where a substantial dispute exists, the Court of Appeals for the Ninth Circuit has held that one exists when determination of liability requires an extensive and contested evidentiary hearing involving substantial evidence.

2 COLLIER ON BANKRUPTCY ¶ 109.06[2][c] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2014).

That above-quoted language supports a conclusion that the claims of Martin and Victor Properties are unliquidated, because a determination of liability in the Texas litigation will require an extensive and contested evidentiary hearing involving substantial evidence. Accordingly, it is premature to decide whether the Debtor's unsecured debts exceed the eligibility limits of § 109(e). *See Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1074 (9th Cir. 1999) ("We are persuaded that under this circuit's "readily determinable" standard, if the

amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated. Whether the debt is subject to 'ready determination' will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor.").

> Turning to whether this Debtor is an individual with regular income, COLLIER writes:
>
> Chapter 13 relief is not limited to those whose regular income comes from employment, but encompasses "individuals on welfare, social security, fixed pension incomes, or who live on investment incomes." In *Bibb County Department of Family & Children Services v. Hope (In re Hammonds)*, the Court of Appeals for the Eleventh Circuit held that public assistance benefits were regular income and that a recipient of those benefits could be a chapter 13 debtor. The standard is based not on the source of the income but, rather, on its regularity and sufficiency to meet plan payments. Although the debtor must demonstrate an ability to meet plan payments, eligibility under chapter 13 does not require that the debtor receive regular income at the time of the petition or that the exact amount of future income be ascertainable at that time. It also does not require that the regular income be weekly or monthly, as long [as] it is reasonably predictable and sufficient to make the proposed plan payments. However, an extremely irregular income pattern, or an income that is too low to allow for plan payments, will fail to meet the eligibility requirements of section 109(e).

COLLIER ON BANKRUPTCY, ¶ 109.06[1] (footnotes omitted).

Debtor's counsel argued at the hearing, without citation to case law, that the best time to determine Debtor's income is at the time her plan is confirmed. Certainly Debtor is correct if the Debtor is attempting to satisfy the disposable income test of § 1325(b). *See Hamilton v. Lanning*, 560 U.S. 505, 509 (2010). However, the long-standing rule in this Court is that the bankruptcy petition date governs eligibility requirements and is the guidepost in establishing a person's rights in bankruptcy. *In re Eiesland*, 19 Mont. B.R. 194, 208 (Bankr. D. Mont. 2001), quoting *Leppaluoto v. Combs (In re Combs)*, 101 B.R. 609, 614 (9th Cir. BAP 1989); *see also In*

9

*re Slack*, 187 F.3d at 1073. The determination of an individual with regular income for eligibility purposes is distinct from the determination of disposable income to satisfy the disposable income test.

Thus, according to Debtor's Schedules, SOFA, and her testimony, she is unemployed and currently receives no regular income. While she may be owed by WestPac, recovery of that income according to the Debtor must await the outcome of litigation. Based on the evidence in the record at this time, the Court finds that the Debtor is not an individual with regular income as required for eligibility for Chapter 13 under § 109(e) because she has no income at this time, and her only source of plan payments are from the sale of assets, including her residence. The evidence shows that her income is too irregular and too low to allow for plan payments. COLLIER ON BANKRUPTCY ¶ 109.06[1]. The Court concludes that Debtor's lack of eligibility is "cause" for conversion under § 1307(c).

Under § 1307(c), the Court may convert or dismiss a case, "whichever is in the best interests of creditors and the estate." In weighing the evidence, the Court notes that the Debtor has two prospective job offers, either of which might cure her lack of regular income. While the Debtor lacks regular income at present, it does not appear in dispute that the Debtor has substantial equity in her residence sufficient to pay all creditors in full with interest.

Dismissal of the case, while not requested by Martin and Victor Properties, would expose the Debtor to resumption of litigation in the courts of three states. The evidence shows that she is not current on her mortgages, so her residence would be subject to foreclosure outside of bankruptcy and the possible loss of equity. Conversion to Chapter 7, in contrast, would continue the protection of the property during which a trustee could conduct an orderly liquidation with

the prospect of full payment of all claims, and a surplus to the Debtor. For present purposes, the Court finds that conversion of the case is in the best interests of creditors and the estate in order to preserve the equity in Debtor's residence pending an orderly liquidation.

Despite the above, in the interests of justice and based on the Debtor's testimony that she may find employment in the immediate future, this Court deems it an appropriate exercise of its discretion to delay the entry of its conversion order in this case and to hold another evidentiary hearing on November 5, 2015, to give the Debtor an opportunity to show by sufficient evidence that she has found employment which is reasonably predictable and sufficient to make the proposed plan payments so as to be an individual with regular income eligible for Chapter 13 relief under § 109(e).  *See* COLLIER ON BANKRUPTCY ¶ 109.06[1].  If the Debtor is unable at the hearing on November 5, 2015, to convince the Court that she has obtained regular income sufficient to make plan payments, the Court will order the case converted to Chapter 7 immediately.

**IT IS ORDERED** that the Court will delay entry of a conversion order in conformity with the above, overruling the Debtor's objection and granting the motion to convert this chapter 13 case to a case under chapter 7 filed by Gary Martin and Victor Properties, LLC (Doc. 13), until after **November 5, 2015**; and an additional evidentiary hearing will be held at Missoula on **November 5, 2015**, **at 9:00 a.m.**, or as soon thereafter as counsel can be heard, in the **BANKRUPTCY COURTROOM, RUSSELL SMITH COURTHOUSE, 201 EAST BROADWAY, MISSOULA, MONTANA**, at which the Debtor will have the opportunity to offer additional evidence showing she is an individual with regular income and thereby eligible for Chapter 13 under § 109(e).  If the Debtor fails to offer sufficient evidence at that hearing

11

showing that she is an individual with regular income, this Court will enter a conversion order converting this case to a case under Chapter 7, effective on November 5, 2015.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana