**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re<br><br>**BRENDA K. JURGENS**,<br><br>      Debtor. | Case No. **15-60592-7** |

**MEMORANDUM OF DECISION**

At Butte in said District this 30th day of March, 2016.

In this Chapter 7 case, creditor Gary Martin ("Gary") filed a Motion to Modify Stay ("Motion") on February 17, 2016 (Document No. 182) seeking relief from the stay in order to file a "Declaratory Judgment Action" in Cause No. 43413 in the District Court of Burnet County, Texas, No. 424TH, in which Martin seeks a declaratory judgment that certain statements made by the Debtor Brenda Jurgens ("Brenda" or "Debtor") are defamatory, false and made with actual malice or negligence. The Debtor filed an objection. A hearing on Gary's Motion was held after notice at Missoula on March 10, 2016. The parties appeared represented by counsel. Witness testimony was heard and exhibits were admitted. After the parties completed their cases-in-chief the Court took Gary's Motion under advisement. After review of the motion, Debtor's objection, the record and applicable law, this Court exercises its discretion and denies Gary's Motion to Modify Stay.

Brenda appeared and testified at the March 10, 2016, hearing represented by attorney Edward A. Murphy of Missoula. Gary was represented by attorneys Jenny M. Jourdonnais and Charles E. Hansberry of Hansberry & Jourdonnais, PLLC, of Missoula. Attorney Jules Peter

1

Slim appeared, representing creditors/minor children. In addition to Brenda, witnesses Trent Baker, Robyn Frohlin, and Jake Costin also testified.[1] Exhibits ("Ex.") 13, 21, 22, 23, 24, 27, 28, 29, 30, 33, 35, 37, 39, A, B, C, D, E, H, K, M, N, X, and Y were admitted into evidence. At the request of Gary's counsel, the Court took judicial notice of testimony and exhibits admitted in a prior hearing, subject to the testimony admitted at the March 10, 2016, hearing.

This Court has exclusive jurisdiction of the above-captioned Chapter 7 bankruptcy under 28 U.S.C. § 1334(a). Gary's Motion to Modify Stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## BACKGROUND FACTS & PROCEDURAL HISTORY

Brenda and Gary are sister and brother and children of Alice Jean Martin ("Alice") and John William Martin ("Billy"). Both Alice and Billy are deceased. Brenda is the current executor of Alice's estate which is being administered in state court in Midland County, Texas. She was executor of Billy's estate. Gary filed a will contest alleging misconduct by Brenda in her administration of their parents' estates.

Brenda testified about Alice's deteriorating health, and how Brenda would fly home to Texas numerous times to help with Alice's care and management of her assets. Brenda testified that in March of 2008, Alice took Benadryl and had an adverse reaction which resulted in Alice being institutionalized. Brenda flew home and took Alice out of a psychiatric hospital, and spent the next 6 months taking care of Brenda and Billy who both were in nursing homes.

Alice was in and out of hospice care in Texas. Alice's physician Eric Olson ("Olson")

---

[1] Extended testimony of Alice's physician, Eric Olson, was read into the record from Ex. 27.

diagnosed Alice as suffering from dementia and psychosis as of July 30, 2008.  Ex. 27.   Olson testified that, primarily because of her dementia, Alice was totally incapacitated and that her condition deteriorated until her death.  Alice was unable to walk and unable to swallow her oral medications.  Brenda testified that Alice was misdiagnosed as bipolar, was incontinent, had a bad left ventricle, and had one leg amputated.  Despite Dr. Olson's diagnosis of dementia, Brenda testified that Alice had times when she was lucid.  At one time, Brenda testified, she received approximately $200,000 in medical bills for Alice.  Brenda testified that Gary was living in Marble Falls, Texas, but never participated in Alice's care.

      Ex. A is a durable power of attorney purportedly signed by Alice on August 25, 2008, by which Alice appointed Brenda to serve as her attorney-in-fact.  Brenda testified that Alice signed Ex. A and that her father Billy had signed a similar durable power of attorney naming her as his attorney-in-fact.  Brenda had been beneficiary of Alice's bank account at Wells Fargo, was added as attorney-in-fact and as joint owner in one instance.

      Brenda testified that she spent her own money purchasing diapers, medicine and other supplies for Alice's care, which she would ship to Alice if Brenda was out of state.  Brenda wrote checks and used debit cards and credit cards charged to Alice's bank account.  Brenda also made purchases on her own credit cards for Alice's care, for which she wrote checks from Alice's account to reimburse herself.  Ex. 15 shows a check in the amount of $60,000 written on Alice's Wells Fargo account, which Brenda testified she signed under the durable power of attorney and deposited into Brenda's Farmers State Bank account.  Brenda testified that her parents were proud people and that her father Billy had instructed her to reimburse herself for funds she expended for her parents' care, which is what she did when she wrote the $60,000 check on Ex.

3

15. Frohlin testified that Brenda was personally benefitting from Alice's money, that there were many disbursements of Alice's money to Brenda before and after Alice's death.

Billy preceded Alice in death in September of 2010. Brenda was executor of Billy's estate. Ex. C is Alice's accounting of Billy's estate filed in his probate case.

On January 15, 2011, Brenda put Alice into hospice. Brenda testified that Alice left hospice three times in one year when she got better.

Alice signed a new will dated January 19, 2011. Ex. B is the will signed by Alice and witnessed January 19, 2011. Brenda testified that the day before Alice signed the new will her potassium levels were low and she appeared incompetent, but that the following day Alice was competent when she signed the new will and had phoned her pastor, asking him to come help her sign her will. Brenda testified that she had nothing to do with drafting or initiating Alice's new will and was not present in the room when Alice and the pastor wrote the new will.

The new handwritten will removed Gary from involvement in administration of Alice's estate and limits the distribution to Gary to $100, along with similar distributions of the residual to Alice's other children, grandchildren and great grandchildren. Ex. B. Brenda testified that the residual clause of Ex. B does not provide that she hold shares for the minor children in trust.

Alice passed away on June 23, 2012, in Midland County, Texas. Ex. 35. A check in the amount of $65,000 was paid to Brenda after Alice's death. Brenda testified that other than that check, no other money remained after paying Alice's funeral expenses and attorney's fees, and her own travel expenses.

Brenda filed an application to probate Alice's will in March 2014. Ex. 35. Brenda testified that the Texas probate court appointed Brenda as executor of Alice's estate.

On August 20, 2014, Gary filed his will contest in Midland County Texas court, No. P17827. Frohlin testified that Gary contested the January 19, 2011 will because Alice lacked competence to sign a new will.

Gary requested that Brenda be removed as executor of Alice's probate estate or, in the alternative, that Brenda be ordered to post a bond of at least $500,000, because of misconduct or mismanagement of her executory duties, failure to return an inventory or unsuitability as a fiduciary because of her arrest for burglary and domestic violence in the State of Washington, for which Brenda pleaded guilty to reduced charges. Ex. 35. Brenda testified that a restitution requirement of her criminal case were dropped by the prosecutor, when her former boyfriend received payment in full for his losses from his insurance company. Ex. Y.

Frohlin testified that Gary's will contest has not been decided and that Gary now has some but not all the documents he requested from Brenda. Although Brenda has produced some documents requested, she has not produced receipts for her expenditures from the bank account of Alice's estate.

Jake Costin is employed by Gary as comptroller for Gary's companies and also teaches classes in managerial finance. Costin testified that he spent about 60 to 70 hours examining bank statements, debit card statements, credit card statements and receipts related to Alice's estate produced by Brenda. He had not read a summary or executory's account of Billy's estate; he admitted that it would be important to see the money flow from Billy's estate to Alice, if that were available.

Costin testified that $292,752 in expenses cannot be verified as beneficial to Alice's estate, including a $65,000 check Brenda wrote to herself. Costin testified that Alice has not

5

accounted for $136,115 of Alice's assets and that at least $61,115 worth of Alice's assets have disappeared.

On October 10, 2014, Gary filed a declaratory judgment action in No. 43413, District Court of Burnet County, Texas, Ex. 22, seeking a declaratory judgment that several statements[2] Brenda made in documents she filed in the will contest are false and were made with actual malice or negligence. Brenda filed a response denying Gary's allegations. Ex. 23.

Brenda filed a voluntary chapter 13 bankruptcy petition commencing this case on June 30, 2015. Gary and Victor Properties, LLC ("Victor Properties") filed a motion to convert the case to Chapter 7.

Brenda listed Victor Properties as a creditor with two secured claims against her homestead in Montana based on a disputed judgment lien and deed of trust. Victor Properties filed Proofs of Claim Nos. 8 and 9. After the Debtor filed objections Victor Properties filed amended Proofs of Claims, against which no further objections have been filed.

Brenda listed Gary as a creditor on Schedule F with a disputed, unliquidated claim in an unknown amount. Gary filed Proof of Claim No. 10 and, after the Debtor filed objections, Gary filed an amended Proof of Claim 10, asserting an unsecured claim in the amount of $400,000 as heir of the estates of Alice and Billy Martin amount, with the basis of claim stated as "misappropriation of estate assets, fraud, breach of fiduciary duty." Debtor has not filed an objection to Gary's amended Proof of Claim.

Gary and Victor Properties filed a previous motion to modify stay on August 27, 2015, seeking relief from the stay to proceed with Gary's will contest in Cause No. CCI 17920 in

---

[2] The alleged false statements are listed at page 3 of Ex. 22.

Midland County, Texas, ancillary to the probate of Alice's estate in No. 17827 in the Estate of Alice Jean Marin, Deceased, in the County Court at Law Number Two, Midland County, Texas. Brenda filed an objection stating that the motion should be denied until she is in a position to pay for the Texas litigation.

On October 8, 2015, the Court overruled Brenda's objection and granted Gary's first motion to modify stay. The Court noted that the Chapter 13 Trustee consented to the motion to modify stay and that Brenda had not sought approval from this Court of employment or payment of her Texas attorneys. The Court concluded that Brenda failed her burden to show that relief from the stay should not be granted; the Court provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor arising from the Texas will contest. Doc. 85.

On November 5, 2015, the Court overruled the Debtor's objections, granted the motion to convert filed by Gary and Victor Properties and converted the case to a case under Chapter 7. Brenda filed amended Schedules, and on Schedule F stated the amount of Gary's disputed unsecured claim as $400,000.

On February 17, 2016, Gary filed his pending Motion to Modify Stay seeking relief to proceed with litigation of his declaratory judgment action against Brenda for defamation in Cause No. 43413 in the Burnet County, Texas, district court., to final judgment. Brenda filed an objection contending that any claim of Gary for defamation would be a dischargeable debt for which the deadline to file dischargeability complaints has expired and that Gary is "attempting to generate a litigation storm" and conduct additional discovery unrelated to the will contest.

**DISCUSSION**

When Brenda filed her bankruptcy petition, the "automatic stay" of 11 U.S.C. § 362(a) took effect.

> Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b). The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives debtors a breathing spell from creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

*In re Mittlestadt*, 20 Mont. B.R. 46, 50-51 (Bankr. D. Mont. 2002).

Gary moves for relief from the stay for "cause" under § 362(d)(1). As the party seeking relief, Gary must first establish that cause exists for relief under § 362(d)(1). *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. BAP 2009) (citing *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 206 B.R. 196, 200 (9th Cir. BAP 1996)). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is not warranted. *Id.*

Under § 362(g), a creditor has the burden of proving that a debtor does not have equity in property, while the debtor has the burden of proof on all other issues to show that the stay should not be modified. *Mittlestadt*, 20 Mont. B.R. at 52. Equity is not at issue with respect to Gary's Motion which is based upon § 362(d)(1). This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three

instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause". What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*Westco*, 18 Mont. B.R. at 211-12.

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay. A decision to lift the automatic stay is within a bankruptcy court's discretion and subject to review for an abuse of discretion. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995); *Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (9th Cir. BAP 2010); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003).

Relief from stay proceedings are handled in a summary fashion. The Ninth Circuit Bankruptcy Appellate Panel explained:

> Relief from stay proceedings such as the one brought by Wells Fargo are primarily procedural; they determine whether there are sufficient countervailing equities to release an individual creditor from the collective stay. One consequence of this broad inquiry is that a creditor's claim or security is not finally determined in the relief from stay proceeding. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740–41 (9th Cir.1985) ( "Hearings on relief from stay are handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing."); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir.1994) ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect...."); *First Fed. Bank v. Robbins (In re Robbins)*, 310 B.R. 626, 631 (9th Cir. BAP2004).

*Veal v. Am. Home Mortg. Serving, Inc. (In re Veal)*, 450 B.R. 897, 914 (9th Cir. BAP 2011).

A party seeking relief need only establish that it has a colorable claim to enforce a right

against property. *Edwards v. Wells Fargo Bank, N.A. (In re Edwards)*, 454 B.R. 100, 105 (9th Cir. BAP 2011), citing *Veal*. Gary must first establish a prima facie case that cause exists for relief under § 362(d)(1). *Gould*, 401 B.R. at 426; *Duvar*, 205 B.R. at 200. Once a prima facie case has been established, the burden shifts to the Debtor to show that relief from the stay is not warranted. *Id.*

As quoted above in *Veal*, Gary's claims are not finally decided in this summary relief from stay proceeding. Previously Gary was granted relief from the stay to proceed to judgment in the will contest, in which the parties appear to be bogged down in discovery. The instant Motion to Modify Stay seeks further relief to proceed with the declaratory judgment action, but that also is not finally decided in this proceeding. The only thing this Court need decide is whether stay relief should be granted to allow the declaratory judgment action to proceed. The Court concludes that it should not.

Frohlin admitted that Gary does not seek any monetary relief in the declaratory judgment action, but rather only seeks to have certain statements made by Brenda related to the will contest be declared false in order to remedy alleged defamation. Debtor objects that Gary's claim would be dischargeable if she is granted a discharge, and that she should not be subject to another "litigation storm." The Court agrees. The Debtor did not object to going forward with the will contest if she had the financial ability to pay for it. The Court granted Gary relief from the stay to proceed with the will contest litigation in Texas.

Gary then initiated Adversary Proceeding No. 16-00009 seeking an injunction against Brenda using her homestead exemption until he has an opportunity to seek imposition of a constructive trust against her homestead based upon the future results of the Texas will contest.

The Court entered a temporary restraining order on the condition that Gary deposit a $260,000 bond as security.

In exercising its discretion, this Court concludes that justice is better served by denying Gary's pending Motion to Modify Stay. The parties need to litigate the Texas will contest to conclusion in order that this Court can utilize the findings and/or conclusions to decide pending contested matters, and conclude this case and Adversary Proceeding No. 16-00009 without further delay. The Court finds and concludes that sufficient cause has not been shown by the record[3] to grant Gary further relief from the stay to proceed with a declaratory judgment action, which would not only impose additional burdens on the Debtor regarding matters which may be dischargeable, but also might distract the parties from concluding the Texas will contest which must be their focus.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above denying Gary Martin's Motion to Modify Stay (Doc. 182).

_____
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge

---

[3] Gary's declaratory judgment action, Ex. 22, was admitted. Gary did not appear and testify; however, no evidence exists in the record other than Gary's complaint alleging that Brenda made false statements or that they damaged Gary's reputation. Brenda denied the allegations in her answer.